Jack McPEEK, Plaintiff,

v.

**DAYTON FORGING AND HEAT TREATING COMPANY, et al.,**
**Defendants.**

No. C–3–83–084.

United States District Court,
S.D. Ohio, W.D.

Aug. 26, 1983.

---

Dwight Brannon, Michael Tucker, Dayton, Ohio, for plaintiff.

Thomas J. Harrington, Dayton, Ohio, Frederick G. Cloppert, Jr., Columbus, Ohio, for defendants.

### DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DEFENDANT'S MOTION TO AMEND SUSTAINED; FURTHER PROCEDURES ORDERED OF COUNSEL

RICE, District Judge.

Plaintiff filed suit in this case on February 9, 1983, under § 301 of the Labor Management Relations Act (LMRA) of 1947, 29 U.S.C. § 185, against Defendants Dayton Forge and Heat Treating Company, the United Automobile, Aerospace, and Agricultural Implement Workers of America, and its Local No. 785. The union Defendants have moved (Doc. # 7) to dismiss, or for summary judgment, and the Defendant company has moved (Doc. # 17) for a judgment on the pleadings or for summary judgment. All motions were based on statute of limitations grounds. For the reasons set out below, the Court finds said motions to be well taken and, accordingly, sustains same.

### I.

The material facts do not appear to be in dispute. Plaintiff had been an employee at the Defendant company from August 30, 1979, and was a member of the union Defendants. He apparently received a job-related injury in June of 1981, and was placed on sick leave, by a doctor, on August 18, 1981. Plaintiff attempted to return to work on September 14, 1981, but the company prevented him from doing so, on the presumption (erroneous, according to the Plaintiff) that he had informed a company foreman that he would return to work on September 6.

On September 15, 1981, the company terminated Plaintiff for (allegedly) not reporting to work. Plaintiff filed a grievance on October 20, 1981, but the company dismissed the grievance for being untimely filed.[1] Despite appeals from the Plaintiff, the Defendant unions refused to file a grievance for him. Plaintiff also claims that the unions never "notified him of the necessity of filing any grievance or Court action in a specified time period." Affidavit of Jack McPeek, Doc. # 18, Ex. C, ¶ 5.

Plaintiff eventually filed a "hybrid" § 301/fair representation suit in this Court. *See, DelCostello v. International Brotherhood of Teamsters*, —— U.S. ——, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983) (*DelCostello*). In his complaint, Plaintiff alleged that the company breached the collective bargaining agreement, by discharging him without just cause, and by not following certain procedures when they discharged or terminated him. He also alleged that the unions breached their duty of fair rep-

---

1. The collective bargaining agreement (copies attached to complaint and Doc. # 4) provided that a grievance will be filed within two weeks after the incident in question occurred. Art. 5, ¶ 27.

resentation, in that they "allowed" the company to terminate him without following proper procedures, refused to file a grievance on his behalf, and did not advise him "as to the procedure to be followed or his duties under the collective bargaining agreement." Finally, Plaintiff admitted that he "did not pursue any type of internal grievance procedure outlined in the collective bargaining agreement," but alleged that same was excused by the unions' failure to properly represent him.

## II.

Plaintiff's cause of action accrued when he "knew or reasonably should have known that [a breach of the duty of fair representation] had occurred, even if some possibility of nonjudicial enforcement remained." Adkins v. General Motors Corp., 573 F.Supp. 1188, 1192 Case No. C-3-82-011 (S.D.Ohio April 15, 1982), slip op. at 9 (quoting, Santos v. District Council of New York City, 619 F.2d 963, 969 (2d Cir. 1980)), appeal and cross-appeal docketed after final judgment entry, Nos. 83-3392, 83-3416 (6th Cir. June 14, 1983). Herein, Defendants argue that this action accrued on or shortly after October 22, 1981, when Plaintiff's grievance was dismissed for being untimely filed. At that time, they contend, Plaintiff knew (or should have known) the facts upon which he would base his claim of unfair representation. This argument seems to be sound, and Plaintiff does not appear to contend otherwise. Accordingly, the Court will assume that the action accrued on or shortly after October 22, 1981.

■ In their memoranda, the parties vigorously contest which statute of limitations should apply to this case. However, as Defendants point out, the Supreme Court appears to have settled the issue in its recent decision of DelCostello, supra. Therein, the Court held that in "hybrid" § 301 actions, such as this one, the applica-

ble statute is the six-month limitations period found in § 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b). 103 S.Ct. at 2285. Applying NLRA § 10(b) to this action would clearly time-bar the suit, since Plaintiff filed well after six months following the accrual date.

The Defendant has moved to amend its answer to raise the use of NLRA § 10(b) as an affirmative defense. Doc. #23. The Court sustains said motion. See, Lawson v. Truck Drivers Union Local 100, 698 F.2d 250, 256 (6th Cir.1983), petition for certiorari filed, 51 U.S.L.W. 3759 (U.S. April 8, 1983) (No. 82-1667) (approving amendment to answer under similar circumstances).

■ While Plaintiff did not address the impact of DelCostello, two issues regarding the applicability of that case deserve some mention. First, the question arises [2] whether this Court should follow the "normal rule" of applying DelCostello to all pending "hybrid" § 301 lawsuits (in other words, whether the decision should be applied retroactively or merely to situations occurring on or after the date of the decision). See, Lawson v. Truck Drivers Local Union 100, supra, 698 F.2d at 254. The Court holds that DelCostello should be applied retroactively—to all cases pending in Court on the date of the decision.

A similar question arose following the Supreme Court's decision in United Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981). There, the Court held that the timeliness of a § 301 suit was to be determined by reference to the appropriate state statute of limitations. Id. at 60, 101 S.Ct. at 1562. The most appropriate statute for a "hybrid" § 301 suit, the Court held, was a state limitation period governing suits to vacate arbitration awards. Id. at 64, 101 S.Ct. at 1564. The Court did not address

---

**2.** Plaintiff does not argue that DelCostello, or any pre-DelCostello case law, should not be applied retroactively. This Court has elsewhere held that failure to raise this issue in effect waives any argument thereon. See, Lamore v.

Inland Division, 550 F.Supp. 1005, 1013 n. 9 (S.D.Ohio 1982), aff'd without published opinion, 714 F.2d 140 (6th Cir.1983). Nevertheless, the Court deems it prudent to at least address the issue, given that it may arise in the future.

whether NLRA § 10(b) should be applied, *see, id.* at 60 n. 2, 101 S.Ct. at 1562 n. 2, a question eventually answered in the affirmative in *DelCostello.* Following *Mitchell,* most courts, including this one, *see, e.g., Lamore v. Inland Division,* 550 F.Supp. 1005 (S.D.Ohio 1982), *aff'd without published opinion,* 714 F.2d 140 (6th Cir.1983); *Hudson v. Teamsters Local Union No. 957,* 536 F.Supp. 1138 (S.D.Ohio 1982), applied *Mitchell* retroactively, *i.e.,* to all hybrid § 301 cases pending on the date of the decision. This approach was adopted by the Sixth Circuit in *Lawson, supra,* which held that *Mitchell* was not a "clear break" with past law which might justify the non-retroactivity of a decision. 698 F.2d at 254. *See, e.g., Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971).[3]

This Court holds that the same result should obtain for applying *DelCostello.* Like the *Lawson* discussion of *Mitchell,* this Court cannot characterize *DelCostello* as a clear or complete break with the past. To be sure, in *DelCostello,* the Supreme Court for the first time directed lower courts to apply a single *federal* statute of limitations in a § 301 action, rather than a variety of "appropriate" state statutes. But as the *Lawson* court stated, pre-*DelCostello* case law, like pre-*Mitchell* case law, was "a legally chaotic situation," 698 F.2d at 254, and both decisions can be viewed as an attempt to put some order into the law. *See, DelCostello,* 103 S.Ct. 2291 & n. 15, 2292 & n. 18 (noting great variety of state statutes applicable to § 301 actions). Moreover, the *DelCostello* holding itself was foreshadowed by Justice Stewart's concurring opinion in *Mitchell,* and numerous post-*Mitchell* lower court opinions, including this Court's decision in *Adkins, supra. See also, id.,* at 1200–

1201 (listing cases applying NLRA § 10(b)); *Badon v. General Motors Corp.,* 679 F.2d 93, 99 (6th Cir.1982). Finally, applying a six-month statute of limitations to Plaintiff's case is hardly inequitable, given (1) "the relatively rapid final resolution of labor disputes favored by federal law," *DelCostello,* 103 S.Ct. at 2292, and (2) that most courts following *Mitchell,* as noted above, were willing to apply even *shorter* state statutes to hybrid § 301 actions.[4] In short, the Court does *not* find present the factors discussed in *Chevron Oil, supra,* which might suggest that *DelCostello* should not be applied retroactively. The Court also notes that Judge William Lee recently reached the same conclusion. *See, Foltz v. Teamsters Local Union 414,* Civil No. F 83–63, (N.D.Ind. August 8, 1983). *See also, Storck v. Teamsters Local No. 600,* 712 F.2d 1194, 113 L.R.R.M. 3583 (7th Cir.1983) (per curiam).

The second issue concerns the nature of Plaintiff's lawsuit. In the context of attempting to distinguish certain pre-*DelCostello* case law, Plaintiff makes the interesting argument that his case might be characterized as a *non*-hybrid § 301 action, since his suit may ultimately be one only for breach of the collective bargaining agreement. He reaches this conclusion by suggesting that the alleged inapplicability of the grievance procedure in said agreement to his termination,[5] or the company's alleged repudiation of same, "may absolve either UAW or Local 785 from any liability for violation of the duty of fair representation." Plaintiff's Memorandum Contra, Doc. #18, p. 11 n. *. It follows, he contends, that the Ohio six-year statute, Ohio Rev.Code Ann. § 2305.07, for liabilities created by a statute (*i.e.,* LMRA § 301) can be applied to his case. *Id.,* p. 11.

---

**3.** The retroactivity of *Mitchell* was raised by the parties in *DelCostello,* but the Court did not reach the point, given its ultimate disposition of the case. 103 S.Ct. at 2287 n. 11. *Cf. id.* 103 S.Ct. at 2296 n. 2 (O'Connor, J., dissenting) (*Mitchell* should be applied retroactively).

**4.** In *DelCostello,* the Court pointed out that fully *forty* states have statutes of limitations to vacate

arbitration awards of 90 days or *less.* 103 S.Ct. at 2291 n. 15. The Ohio statute is 90 days. Ohio Rev.Code Ann. § 2711.13.

**5.** In part III of this opinion, *infra,* the Court addresses this argument in some greater detail, and finds it not to be persuasive.

**304**

It is quite true, as Plaintiff suggests, that a "straight-forward suit under § 301 ... for breach of a collective bargaining agreement," *DelCostello,* 103 S.Ct. at 2289, would be governed by *Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), the seminal case where the Supreme Court first stated that § 301 suits would be governed by the "appropriate" state statute of limitations. Indeed, *DelCostello* took pains to cite *Hoosier Cardinal* as still good law on its facts, since it was a *non*-hybrid § 301 case. 103 S.Ct. at 2289–91.

However, *Hoosier Cardinal's* vitality does not aid Plaintiff. The short answer to his argument, of course, is that his suit is simply *not* a non-hybrid § 301 suit. An employee is free to sue only his employer, under § 301, for breach of the collective bargaining agreement. *See, e.g., Smith v. Evening News Assoc.,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). He is also free to sue only his union, for breach of the duty of fair representation. *See, e.g., Newton v. Electrical Workers Local 801,* 507 F.Supp. 439 (S.D.Ohio 1980), *aff'd,* 684 F.2d 401 (6th Cir.1982). But here, Plaintiff *has* sued *both* employer *and* union in a hybrid § 301 action, and despite his concession that the unions may not have breached their duty, he has not moved to dismiss them, or to amend his complaint. Nor is it clear that his suit would be legally viable in such a posture. As noted above, Plaintiff admits that he did not exhaust the grievance procedure found in the agreement. Assuming said procedure applies to his termination, the failure to exhaust bars his § 301 suit against the company, for breach of the agreement, *unless* he can show that the unions' breach of its duty of fair representation prevented him from exhausting said procedures. *DelCostello,* 103 S.Ct. at 2290–91; *Bowen v. United States Postal Service,* —— U.S. ——, 103 S.Ct. 588, 594, 74 L.Ed.2d 402 (1983). Plaintiff correctly understood this law, since he alleged in his complaint that his failure to exhaust was due to the unions' breach of their duty of fair representation.

Finally, it is worth noting that even if Plaintiff's suit was somehow capable of being construed as a non-hybrid § 301 action, only against the employer, it would *not* automatically follow that NLRA § 10(b) would *not* govern. As noted above, the *DelCostello* court reaffirmed *Hoosier Cardinal,* and did not purport to order application of NLRA § 10(b) to *all* § 301 suits. 103 S.Ct. at 2294. However, the Court suggested in passing that

> even if this action [a hybrid § 301 suit] were considered as arising solely under § 301, the objections to use of state law and the availability of a well-suited limitations period in § 10(b) would call for application of the latter rule.

*Id.* 103 S.Ct. at 2287 n. 12. Here, Plaintiff's proposed non-hybrid § 301 suit closely resembles, factually, a hybrid § 301 suit, bringing into play the factors (*e.g.,* the need for uniformity, and the rapid resolution of labor disputes) which the *DelCostello* court relied upon in applying NLRA § 10(b). 103 S.Ct. at 2291–92.

For all of these reasons, the Court finds that *DelCostello* controls this case, and the application of NLRA § 10(b) time-bars Plaintiff's § 301 suit.

### III.

Plaintiff vigorously argues that the grievance procedure found in the collective-bargaining agreement does not apply to his termination. Even if this is true, however, the Court above concludes that *DelCostello* applies to *all* pending hybrid § 301 cases, and possibly even some non-hybrid § 301 cases. As it is presently framed, Plaintiff's lawsuit is a hybrid § 301 action. In any event, putting *DelCostello* to one side, the Court is convinced that Plaintiff's suit would be time-barred even under pre-*Del-Costello* case law, upon which the bulk of the memoranda in this case is directed. In the very unlikely event that *DelCostello* does not apply to this case, the Court will briefly address why case law prior to that decision also bars Plaintiff's suit.

Plaintiff contests the applicability of *Mitchell, supra,* and its progeny to this

case. In *Mitchell,* a union therein pursued an employee's grievance to a joint panel, as provided in the collective bargaining agreement, and the panel reached a "binding" decision denying the grievance. 451 U.S. at 58, 101 S.Ct. at 1561. Characterizing the employee's § 301 action as one to vacate an arbitration award, the Court applied the state statute of limitations for vacating such awards. *Id.* at 62, 101 S.Ct. at 1563. In *Badon, supra,* the Sixth Circuit applied the *Mitchell* holding to a hybrid § 301 action, even though the employee's claim was never heard by a panel or went to arbitration. However, *Mitchell* still applied, since "[a]lthough [the] claim was never heard by an impartial panel because of the union's failure to appeal it, the dispute was resolved and became final according to the contractually established resolution process." 679 F.2d at 98. Following *Badon,* this Court, and other courts within this circuit, have applied the *Badon* holding to § 301 suits where a grievance procedure was instituted but never completed, or where a grievance concerning a dispute could have been, but was not timely submitted (or submitted at all) to a grievance procedure. *See, Adkins, supra,* at 1195–1196 (citing cases).

Plaintiff seeks to avoid application of this case law by arguing that the grievance procedure herein did not apply to his termination. He contends that the Defendant company "repudiated" the procedure, by not suspending him first for five days, with an opportunity for a hearing, before the termination. These procedures, he claims, are mandated by Art. 14, ¶ 111 of the agreement. Moreover, he points out (correctly) that he was terminated pursuant to Art. 7, ¶ 42(c) (absence for three days) rather than ¶ 42(b) ("discharge (unless discharge is reversed through grievance procedure)"). For these reasons, he concludes, his termination never, in the words of *Badon,* "became final according to the contractually established resolution process," and the *Mitchell* line of cases should not apply.

It is, of course, this Court's duty to initially determine if the meaning of a collective bargaining agreement, or any other contract, is clear and unambiguous. *See, Moon v. Aeronca, Inc.,* 541 F.Supp. 747, 754 (S.D.Ohio 1982). Even assuming that Plaintiff is correct in his assertion that certain procedures should have been, but were not, followed, the Court agrees with the company that such a failure, as well as his claim that his termination was without just cause in the first instance, can be contested in the grievance procedure found in Art. 5 of the agreement. The agreement broadly defines grievances as "complaints which concern alleged violations of the contract," Art. 5, ¶ 25. Notice of a grievance must be filed within two weeks "after its occurrence or latest existence," and failure to file, or filing in an untimely manner, "shall be construed and deemed to be an abandonment of the grievance." *Id.,* ¶ 27. Finally, Plaintiff's argument is belied by the fact that *he* filed a grievance over the very acts by the Defendant company raised in the complaint. The grievance, as noted above, was dismissed for having been filed in an untimely fashion. Accordingly, the Court holds that Plaintiff's termination *did* "become final" according to the grievance procedure, mandating that *Mitchell* and its progeny should apply to this case. Applying the three month limitations period found in Ohio Rev.Code Ann. § 2711.13, for vacating arbitration awards, would time-bar Plaintiff's suit.

In addition, even if the grievance procedure did *not* apply to his termination, rendering *Badon* inapposite, a strong argument can be made that the most analogous limitations period would be NLRA § 10(b). *See, Badon, supra,* 679 F.2d at 99; *Adkins, supra,* at 1198–1201 (both pre-*Del-Costello* decisions). *See also, DelCostello,* 103 S.Ct. at 2287 n. 12. As outlined above, applying NLRA § 10(b) would also bar Plaintiff's lawsuit.

For these reasons, pre-*DelCostello* case law also would time-bar Plaintiff's action.

## IV.

The Court deems it appropriate to treat Defendants' pending motions as ones for

summary judgment, pursuant to Fed.R. Civ.P. 56, since materials outside the pleadings were considered. Having found that Plaintiff's suit is barred by the statute of limitations, said motions must be, and are, sustained.

The Defendant company is also requested to file a *verified* copy, Fed.R.Civ.P. 56(e), of the collective bargaining agreement with the Court, within ten days after receipt of this entry, in order to properly complete the record. Once said material is received, the Court will terminate this case upon its docket records.